LARRABEE *& al. petitioners, versus* LARRABEE.

Fraud in the procurement of a deed of land can be established only upon proof, that the grantee or his agent performed some *act* or made some *representation* which was deceptive or false, knowing it to be so.

A testator devised land. The heir at law resisted the probate of the will, alleging the insanity of the testator. Upon a promise by the devisee, that the evidence before the Judge of Probate in favor of the will should be withdrawn, and that he would consent that the will should be disallowed, the heir conveyed a part of the land to the devisee;—*Held,* that in order to set aside the deed upon the allegation, that it was procured by fraud, proof of the insanity is not admissible, unless connected with evidence tending to prove, or with an offer to prove, that the insanity was known to the devisee or his agent, prior to the taking of the deed.

Upon such an investigation in this Court, evidence is admissible to show what testimony, prior to the execution of the deed, was given of the insanity, in the presence of the grantee, on the trial of the will in the probate court; because it affects him with knowledge that the insanity was charged.

But to authorize any effect to be given to such evidence respecting any fact, or state of facts, the *whole* of it should be produced.

A deed conveying land may be valid between the parties to it without consideration.

For a grant, by an heir at law, of a reversionary interest in land, authorizing the grantee to take possession at the termination of the life estate, a sufficient consideration, if it need any, is constituted by an agreement, (made by the devisee of the reversion,) that he would assent to the disallowance of the will by the Judge of Probate, and would withdraw the testimony already laid before the Judge in support of it.

ON EXCEPTIONS from *Nisi Prius,* SHEPLEY, C J. presiding. PETITION FOR PARTITION.

William B. Larrabee died, possessed of personal and real estate. He left a wife, Mary W. Larrabee, and also a sister, Mary Larrabee, who was his sole heir at law.

He made a will, by which he bequeathed to his wife all his personal estate, with the exception of a clock, and devised to her the use of his real estate for her life. He bequeathed the clock to William Larrabee, and to Nehemiah Larrabee he devised, (to him, his heirs and assigns,) *two thirds* of his real estate, subject to said life estate; he also devised to Sarah C. L. Hanson, her heirs and assigns, *one third* of his real estate, subject to said life estate. The probate of the will was re-

sisted on the ground of insanity. Evidence upon that point was presented before the Judge of Probate, who, by a decree of March 5, 1842, disallowed the will, and it was never probated. At the time of the disallowance of the will, it was known to the Judge of Probate, that an arrangement had been made, by parties concerned, that the evidence already before him in favor of the will should be withdrawn, and the will disallowed.

On the same 5th of March, Mary Larrabee, the said heir at law, gave a bond to the widow, Mary W. Larrabee, stipulating that, if the will should be disallowed, she would, by deed, convey to her all the personal property which she might inherit from her brother, and also the whole of the real estate for the lifetime of the said Mary W.

Such a deed was executed on the 9th of March, 1842. On the same 9th of March the heir executed a deed to said Nehemiah Larrabee of the one half, and to Sarah C. L. Hanson of one third of the real estate, the said Nehemiah and the said Sarah "to come into possession upon the death of Mary W. Larrabee."

All these deeds were in the common form of quitclaim deeds, and each acknowledged a consideration of $500.

This is a petition for partition. It is brought against said Mary Larrabee by said Nehemiah and Sarah, for their respective parts of said estate, according to said deeds. The respondent, the grantor in those deeds, pleads sole seizin.

The petitioners introduced their respective deeds.

The petition, after being amended by striking out one of the lots of land described in it, claimed a division of the Larrabee homestead" and of the "hundred acre lot."

The respondent contended that the deeds, under which the petitioners claim, were obtained from her without consideration, and by imposition and fraud; that it was fraudulently and falsely represented to her that the Judge of Probate was intending to approve the will, and was also represented to her that, if she would make these deeds, the efforts to get it approved, and the evidence already offered in its favor would be withdrawn, and it would then be set aside.

She put in the deposition of Nathaniel Groton, the Judge of Probate. It shows that the questions were put to him, as to what evidence, on the matter of the insanity, certain witnesses gave before him. These questions were objected to. The exceptions show that " that part of Judge Groton's testimony, in which he gives an account of the evidence given before him at the trial on the will," was excluded.

The deposition stated that after having occupied three days in the trial, the contending parties withdrew, saying they should adjust the matter ; whereupon Judge Groton replied, that he must adjudicate upon the testimony, and did decree that the testator was not of sound mind.

The record shows this decree, and that, on the same day, Mary W. Larrabee was appointed administratrix.

The respondent also introduced the depositions of John Low, Abigail Low, Ammi R. Mitchell and Israel Putnam.

The exceptions show that " the Judge excluded those portions of those depositions which were objected to, *being such parts as relate to the insanity of William B. Larrabee, and such parts also as relate to facts testified to in the Probate Court.*"

The respondent also introduced the deposition of Anthony P. Raymond. It stated many of the acts and sayings of W. B. Larrabee, tending to show his insanity. Among other things he testified ; Larrabee " wanted me to build a platform on the top of the house I lived in for the muses to dance on, as he said, and wanted me to assist him in selecting ten of the prettiest and most active, and in placing them on the platform to sing and dance every Monday morning. He insisted on my doing this with a great deal of pertinacity and repeated the request a great many times."

The exceptions show that " so much of this deposition was excluded as relates to the insanity of W. B. Larrabee."

The respondent's counsel requested the presiding Judge to give the jury the following instructions among others.

1. If the respondent was induced to give the deeds for a promised consideration, which the promising parties had not

in law power to perform, to the full extent to which that undertaking purports to go, and if they induced her to expect an advantage from such promise, which could not legally follow, the deeds are voidable.

2. That the Judge of Probate could not lawfully allow the parties to withdraw the motion and evidence, and consequently the promising party had not power in law to perform their promise to withdraw, and that, if the jury find this promise to be the supposed consideration of the deeds, they are voidable.

3. That if they had legal power so to withdraw, the record shows that they did not do it, and it is a question for the jury to determine whether they intended to do it, when the promise was made.

4. If this was an artifice to obtain deeds from the respondent by imposing upon her credulity, in giving to her a promise, which the parties at the time of promising did not intend to perform, and never did perform, this constitutes a fraud, which vitiates the deed.

5. If the Judge of Probate, before the making of the deeds, informed the parties, adverse to the respondent in this action, that he could not recognize and carry into effect the proposed arrangement, but should adjudicate upon the evidence, and these parties did not inform this respondent of that fact, but suffered her to go on in ignorance of the fact, and make the deeds in consideration of the supposed withdrawal of the evidence, and the agreement to have the will broken, this is both a failure of consideration and a fraud upon this respondent, and the deeds therefore are voidable.

These requested instructions were refused so far as they are not contained in the instructions which were given. The jury were instructed, *that* the question for their consideration in this part of the case was, whether the deeds made by the respondent were valid conveyances; —*that* a ·deed conveying lands might be a valid and effectual conveyance between the parties to it without any consideration; —*that* the adjustment of the controversy, respecting the validity of the will of Wil-

liam B. Larrabee appeared to have been the only considera-
tion, and, if that adjustment or settlement was made without
fraud, it would be a sufficient consideration for the deeds, if
one were required ; — *that* the consideration or the want of it
was unimportant, further than it might have a tendency to
prove, that the conveyances were obtained by fraud, and *that,*
so far as it might have such an effect, it was a proper subject
for their consideration ; — *that* if they were satisfied from the
testimony that the respondent was deceived or circumvented,
and thereby induced, or, by any false and fraudulent repre-
sentations made to her, was induced to make the convey-
ances, they would be invalid, and the verdict should be in
favor of the respondent for the hundred acre lot; and *that*
if not so satisfied, the verdict should be in favor of the pe-
titioners.

The testimony and the instructions respecting the home-
stead are not presented. The jury found a verdict for the
respondent respecting the homestead, and for the petition-
ers respecting the hundred acre lot.

To these instructions and refusals to instruct, the counsel
for the respondent excepted.

Upon the return of the verdict, which was at the Novem-
ber term, 1850, the *respondent* moved that the verdict be set
aside, because against evidence and the weight of evidence.
The case came up for argument at the April term, 1852, at
which term the *petitioners* petitioned that the verdict be set
aside and a new trial granted, upon the ground of newly dis-
covered evidence.

*Gilbert,* for the respondent, upon the exceptions.

It is conceded that a deed either of feoffment or of gift,
may be valid without a consideration. These deeds are
neither of feoffment or of gift; not of gift, because they
acknowledge a pecuniary consideration ; not of feoffment,
because they profess, in their terms, to give possession *in
futuro.* The terms therefore are repugnant to a livery of
seizin, which is an essential requisite of a feoffment.

Neither are they covenants to stand seized, because they

want the consideration of blood or marriage, and because the use was not in the grantor. *Welch* v. *Foster*, 12 Mass. 93. They are not deeds of bargain and sale, because the use, having been vested in another for a life term, the grantor could not be seized to the uses of these grantees. 2 Black. Com. 338.

The estate of the grantor was but a reversion, lying not in livery but in grant. In such a grant, a consideration is essential to its validity. *Parker* v. *Nichols*, 7 Pick. 111 ; *Gault* v. *Hall*, 26 Maine, 561. Then, was there a consideration for these grants? If so, it was in the agreement that the will should be set aside, and the evidence should be withdrawn.

The Judge of Probate had no authority to permit the evidence to be withdrawn. That agreement, therefore, was in violation of law, and could not constitute a consideration. If, in any case, such an agreement could be acted upon by the Judge of Probate, it could only be when all parties in interest should concur. In this case, there was no concurrence of Sarah C. L. Hanson, one of the devisees, or of William Larrabee, one of the legatees.

To show that such an agreement cannot support the deeds, as a consideration, I cite Chitty on Con. (Perkins' Amer. Ed.) 46, 675, 669, 670, 671 and notes, 287, 673, 677 ; *Cole* v. *Gower*, 6 East, 110.

The agreement that the evidence should be withdrawn, was one which neither the petitioners nor the Judge himself could carry into effect. It was ineffectual, and of no value, and could not be a valid consideration. 3 Term Rep. 17. It was an artifice to entrap this aged, ignorant woman, the respondent, into the conveyance of her valuable estates, under a belief that the will was broken, *in consequence* of the agreement, when, in fact, all who were concerned on the other side, knew it was impossible to sustain the will. Were not such facts a fraud? and perhaps the jury found these facts to exist. Ought not the Judge, then, to have given specific instructions on this point?

Portions of certain depositions were excluded. This ex-

clusion was wrongful. If the agreement relied upon could constitute a consideration, it is in the nature of an agreement to delay the prosecution of a claim; a claim, valid in the law. In this case, it is shown that the attempt to sustain the will could not have prevailed. The evidence which was rejected in the depositions, would have proved the impossibility. It was the evidence of the subscribing witnesses that the testator was insane, corroborated by others.

The will then, beyond all question, was destined to a defeat. The agreement not further to try to sustain it, was of no value ; it was a mere pretence. The deeds then were without consideration. It follows, of course, that the rejected testimony ought to have been received.

[The same counsel also argued, at much length, the respondent's motion to set aside the verdict.]

*Tallman,* for the petitioners.

The opinion of a majority of the Court was drawn up by

SHEPLEY, C. J. — The principal issue on this part of the case presented for decision by the jury was, whether the conveyances from the respondent were fraudulently obtained. To show this, there must be proof of acts or representations of the grantees or of their agents ; and that these were deceptive or false; and that they were at the time known to be so.

Testimony tending to prove that William B. Larrabee before, and at the time of executing his will was insane, could have no tendency to prove the alleged fraud, unless the facts exhibiting such insanity were known to the grantees or their agents. Testimony tending to prove facts exhibiting unsoundness of mind, which facts were not known by the grantees or their agents, could be suited only to mislead the jury, and thereby to operate unjustly. Whether the testator was of unsound mind, as an independent fact, could not properly or justly be presented to the jury for consideration and decision. If he was in fact insane, and that was not known to the grantees or their agents, testimony to prove that fact could have no legitimate influence upon a decision

of the question presented, whether the conveyances were fraudulently obtained. If there had been testimony offered having a tendency only to prove, that the facts or any of them, offered to be proved to exhibit unsoundness of mind, were known to either of the grantees or their agents, the testimony offered to prove insanity, and excluded, should have been admitted; and the jury should have been permitted to decide, whether the grantees had knowledge of those facts. If on the contrary, there was no testimony tending to prove, that the facts so offered to be proved, or any of them were known to either of the grantees or their agents, the testimony offered to prove insanity could not have been legally or justly admitted.

The Court cannot come to a conclusion, that the tetimony offered to prove insanity was erroneously excluded, unless there be found some testimony reported in the bill of exceptions, or found in the depositions named therein, tending to prove, that the facts stated in the testimony to prove insanity, or some of them, were known to the grantees or their agents. No such testimony appears to have been reported in the bill of exceptions; and none has been noticed in the testimony excluded. Nor has any been pointed out in the arguments presented. The facts offered to be proved to exhibit insanity, and which were excluded, were not of a character to be publicly known; and there is no testimony tending to prove an intimacy between the families of the grantees and that of the testator. Ammi R. Mitchell on his examination in chief states, that the testator "was considered in such a state of mind that for a spell he was watched," and that "he got away from his watch one time and there was quite a time in hunting him up." On cross-examination he was asked to state his means of knowledge and he stated "it was from general conversation about the town," and that "it was about thirty years ago." This testimony was clearly inadmissible as resting upon mere rumor or town talk.

Testimony to prove the facts exhibited by the testimony received in the Court of Probate should be received in this

Court, for it would exhibit the knowledge of one of the grantees of those facts before the conveyances were made. But the whole of the testimony received in the Court of Probate, respecting any fact, or state of facts, should be presented in this Court to authorize its reception here. Otherwise the respondent might present the account or statement of a fact tending to prove insanity, and omit to have the accompanying circumstances stated, and thereby present to the jury in this Court an entirely erroneous, if not false account of the aspect of the case as it was exhibited in the Court of Probate and known to that grantee.

By the application of these rules it will not be difficult to determine, whether any testimony was erroneously excluded.

It appears from the bill of exceptions, that portions of the depositions of Israel Putnam, John Low and Abigail Low, " which are objected to, being such parts as relate to the insanity of William B. Larrabee" were excluded. The portions excluded might have been more clearly designated, but it is believed, that they can be satisfactorily ascertained. These witnesses did not testify in the Court of Probate, and there is no testimony tending to prove, that the facts, or any of them stated in their depositions, and which were excluded, were known by either of the grantees, or by any agent of theirs before the conveyances were made ; and the portions excluded could not have been received without a violation of legal rules, and without their operating to produce injustice.

Ammi R. Mitchell was a witness to the execution of the will, and he testified in the Court of Probate, and the facts which by his testimony were exhibited in that Court, were admissible as testimony in this Court, if presented in such a manner as to be legally receivable. Most of his testimony respecting the insanity of the testator, contained in his deposition, appears to have been received. The greater part of it was presented by the cross-examination, and it was received without objection.

The only portions of his deposition, which were excluded, or appear to have been excluded, were the questions and answers contained in the fifth and sixth direct interrogatories.

The fifth interrogatory is in these words : — " Did you or not testify, that in your opinion said Larrabee was not sane at the time of making his will" ? This question had reference to his testimony in the Court of Probate, and it was an appropriate one, and it should have been received if the answer had been of a like character. The answer was — " I did testify, that he was not sane in my opinion on some subjects." He does not state what those subjects were. If this testimony had been received it is very obvious, that it would not have presented his testimony in this Court, as it was presented in the Court of Probate. The subjects named in the latter Court, upon which in the opinion of the witness he was not sane, might have been such as to exhibit the absurdity of the opinion of the witness. To have admitted this testimony, would have been to receive that part of his testimony unfavorable to the sanity of the testator unaccompanied by that part which was favorable.

The sixth interrogatory asks the " purport" of a written paper not produced, and which the witness concluded exhibited indications of insanity. The answer is in substance, that he could not " form an opinion as to what it meant at the time." Comment is useless.

A. C. Raymond testified in the Court of Probate and the facts, to which he there testified, accompanied by all the explanatory circumstances there exhibited, would be admissible in this Court. He states many facts in his deposition tending to prove the testator to have been insane within a short period before his will was executed ; and this testimony would have been most material to prove the alleged fraud, if it had come to the knowledge of the grantees in the manner in which it is stated in the deposition. But such does not appear to have been the fact. The witness having stated that he had testified in the Court of Probate, is then asked, whether he " did or not give the same testimony there, that you have now given in this deposition ?"

The answer is, " I did so far as respects the muses, and so far as I was questioned."

It is obvious that this answer leaves it entirely uncertain, what portions of the testimony in the deposition were presented in the Court of Probate, with the exception of "so far as it respects the muses." What portion of his deposition he referred to "as respects the muses," is left too uncertainly designated to be admissible.

The Judge of the Probate Court, Mr. Groton, does not state in his deposition any fact as of his own knowledge, tending to prove that the testator was insane. The complaint is as stated in the bill of exceptions, "that part of Judge Groton's testimony in which he gives an account of the evidence given before him at the trial on the will," was excluded. So far as he stated what any witness before him testified, it was not excluded. So far as he stated what he considered to be the substance or effect of the testimony of any witness, or in the words of the exceptions, so far as "he gives an account of the evidence given before him," it was excluded; and it was clearly inadmissible.

No error is perceived in the instructions which appear to have been appropriate.

The requested instructions so far as they were not embraced in the instructions given, were properly refused. The exceptions are overruled, and the motion to set aside the verdict and the petition for a new trial must be denied.